Catron, J.
dissenting. This court is now called upon, either to discharge the defendant, or to grant him a new trial. It is contended, first, that the proceedings ought to be quashed, because by the statutes of 1741, ch. 24, sec. 48; 1815, ch. 138, and 1819, ch. 39, no second jury could be empannelled, and the prisoner tried and convicted, after the first jury had the cause fully and fairly submitted to them, and who had never rendered a verdict, but the tri-. al was ended by a nolle prosequi. Secondly: It is contended that a new trial ought to be granted, because the jury were permitted to disperse. Thirdly: Because there *186 was not sufficient evidence before the jury to authorize a verdict of guilty.
The prosecuting counsel contends, 1st. That there is n0 record in the circuit court, upon which an appeal in the nature of a writ of error could be granted by that court; and therefore the writ of error must be dismissed, having been improperly, granted. 2d. The application to the circuit court was to its discretion; and that discretion being withholden by that court, this court, as a revising tribunal, has no power to correct the opinion. 3d. That the discretion of the circuit court was correctly exercised, even should this court look into the facts set forth in the bill of exceptions. 4th. That should this court take cognizance of'the cause, and reverse the opinion of the circuit court, yet we could only order the circuit court to proceed and cause the proceedings to be brought up from before the convicting Justices, and then give judgment as law and justice may require; because there is nothing in this court but exparte affidavits, showing cause why the cause should be brought up to the circuit court.
We will examine first, the second proposition of the prosecuting counsel: whether the circuit court had the discretion of withholding the writs of certiorari and super-sedeas; and what power this court has to correct such exercise of discretion.
We will take it for granted, that if the conviction and sentence of death thereon, by the second court and jury, are voidable and erroneous, and ought to be reversed or quashed for want of power in the Justices to pass judgment, then the writ of certiorari is the proper process to revise these proceedings, and the circuit court the proper tribunal to examine them and pronounce the law. The writ of error does not lie in this cause from before the Justices, and therefore the certiorari is the only remedy. By the act of 1809, ch. 49, sec. 4, the circuit courts are given the same jurisdiction in civil and criminal matters, that was possessed by the late superior courts. By the act of 1794, ch. 1, sec. 1, the superior courts have given them *187 a criminal jurisdiction, even more extensive perhaps than the English court of King’s Bench; and they are expressly given cognizance of causes brought before them by certiorari. 2 Hawk. ch. 27, sec. 22, 23, 24 ; 2 Ba. Ab. Error A. 3, 456, show very fully the power possessed by the court of King’s Bench generally, in granting writs of certiorari to inferior courts; and which is very ably and lucidly laid down also by Mr. Chitty, in his 1 vol. of Criminal Law, ch. 9. The circuit courts no doubt have similar powers, in most respects to grant this writ for the control of inferior jurisdictions. In granting this writ we are governed by the English practice, which the superior and circuit courts have pursued; the constitution of this state only applying to civil causes.
Is the writ of certiorari granted as a matter of right, or a matter of discretion? Where it is applied for on part of the defendant, it is only granted as a matter of discretion, by the King’s Bench, or the circuit courts in this country. (2 Hawk. 407, sec. 27, 28, note: 1 Chitty’s Cr. Law, 497. Truly, when the certiorari operates as a writ of error only, then the circuit court, if it perceives errors in the record set forth in the petition, grants the writ, as was done in the King vs. Morley and others, (2 Bur. 1040. But supposing the circuit Judge refuses to grant the cer-tiorari out of court, how can this court compel him to act? Or suppose it is applied for in court, what entry is tobe made of record? To ascertain this,let us examine the course pursued by the defendant, or his master, in this case.
The exparte, affidavit of William Patton is presented in open court, and on motion read as a ground for a fiat for writs of certiorari and supersedeas: no notice is given to the other side, nor is there any thing on the records of the court showing who the parties are, and no record ought to be made of the motion if it is refused, because such refusal is no bar to another motion at a subsequent time, grounded upon the same petition; but if the court is bound to put the refusal of record, and sign a bill of exceptions, and grant a writ of error, then any future mo *188 tion is or ought to be barred; for the writ of error would be ineffectual unless it operated as a supersedeas. (See 1 Chitty’s Cr. Law, 259, 260. A writof error to this court always, when taken in open court and from the circuit court, operates as a supersedeas to the judgment from which the writ of error is taken. What is there in the present case for the supersedeas to operate upon? A cause f No, it had no effect whatever, nor could it have any upon the proceedings before the Justices.
It must be remembered that this court acts in a limited jurisdiction by virtue of statutes, and as a court of error only; and unless a criminal cause comes here by writ of error, we have no power to hear it. Did this cause come here in such shape, or such a part thereof, as to authorize this court to give any judgment thereon? Let us admit that the court acted correctly in signing the- bill of exceptions and making it a part of the record: Did this au-thorise the defendant Bob, to prosecute his appeal in the nature of a writ- of error to this court? The authority given to prosecute appeals in the nature of writs of error from the circuit court to this court, is given by the act of 1811, ch. 72, sec. 11, which provides, “ that when either party in any suit which now is, or hereafter may be depending in any of the circuit courts, shall be dissatisfied with the judgment of such court, or shall be of opinion that there is error in the record of the proceedings in such suit, such party may at the term in which final judgment is rendered in said cause, pray an appeal in the nature of a writ of error to the Supreme Court in the-circuit in which such judgment shall be rendered;” which appeal is to be granted upon bond and security for costs being given by the party appealing. Upon the above clause was the present appeal in error prayed. William Patton produced to the circuit court his affidavit, setting forth the facts and circumstances under which his slave Bob was convicted of the murder charged upon him, upon which the court was moved to grant the defendant Bob, writs of certiorari and supersedeas, to bring his cause into the circuit court, and the court refused to grant such *189 writs. Two facts were absolutely necessary to exist before Bob was entitled to his appeal in the nature of a writ of error: 1st. The suit of the state against him must haye been absolutely depending in the circuit court; and,21dy. Final judgment thereof must have been rendered at the term when the appeal to this court was taken.
First. Was the suit of the State against Bob, for the murder of Hannah Shaddon, ever pending-in the White circuit court? Surely it never was. There was but one way by which it could be withdrawn from the hands of the Justices, and this was by the writ of certiorari, which was refused by that court, leaving the cause in the hands of the convicting Justices, where it now remains. This court, then, is to give judgment of reversal or affirmance, revising the opinion of the circuit court in the cause of the State vs. Bob, a negro slave, for the murder of Hannah Shaddon, when most clearly to my mind, no such cause was ever pending in the circuit court of White county, so far as can be seen from the record of the affidavits before this court; nor is there any such cause before this court.
Secondly. Was final judgment rendered in “ said cause” of the State vs. Bob, at the term of the circuit court when he took his appeal in the nature of a writ of error to this court? There never having been such cause in the circuit court, of course that court could give no judgment thereon. The judgment was final in the inferior tribunal, where it was left unmolested by the circuit court.
There never having been any cause of the description set forth in the affidavits before the circuit court,no judgment affecting the same could be given by that court; nor was there any final judgment given or pretended to have been given; consequently, there is no such cause, or any judgment thereon given by the circuit court, before this court; which, having no cause before it, upon which any judgment can be given, ought, in my opinion, to quash the appeal in the nature of a writ of error.
It is with me, a matter of regret, that the circuit court Jid not issue writs of certiorari and supersedeas, to bring up *190 the cause, and if the judgment was lawful, order the writs to be dismissed, and award a procedendo to the justices to proceed to execute the defendant; or that court might, and had full power, to give the judgment of death upon the verdict of the jury, or to have discharged the defendant. And from the opinion of the court after the cause was laid before it, a writ of error, by the State or the defendant, could, I have no doubt been prosecuted to this court. ■ There is no bar, or reasons other than such as have heretofore existed, why the circuit judge should not now grant the writs of certiorari and supersededs. This he has had power to do every day since the first refusal to grant said writs; and this is a persuasive argument that the cause is not before us.
In causes of great importance, involving principles of the first magnitude and of great difficulty, I think it always prudent for a circuit court to grant a writ of certio-rari, which only operates as a writ of error; as that court can pronounce the judgment of the law, much better and more satifactorily than the inferior tribunal, by which much good may, and no harm can result.
To me, it is very doubtful, whether by the acts of 1741, 1815, and 1819, above recited, a slave can be apprehended and tried for a capital offence, by three justices, and one jury; and while that trial is pending, (and the jury perhaps endeavoring to agree,) four other justices can convene, enter a nolle prosequi to the first proceedings, empannel another jury, arraign the defendant a second time, and try him. Suppose this jury also fails to agree for some days; then three or four other justices take up the matter, convene or summon a jury, enter a nolle prosequi to the second trial, arraign the slave a third time; theya-gain disagree, and in this manner the prosecution proceeds, every time getting stronger, and the wretched slave weaker, until in the end popular prejudice alone, may, and in many cases will convict him, where there is the slightest evidence in the first instance. I distrust this being the law; yet it must be, if the present conviction is correct. Furthermore, four justices sat upon the last trial. The *191 statute of 1819, ch. 35, sec. 2, says three shall preside. This is a proceeding of a character as highly criminal as any society can institute; is contrary to the course of the common law, and predicated upon a statute, which must be strictly pursued. Was it lawful for four justices to preside? Supposing illegal evidence was necessary to convict, and two of the justices originally summoned, were unfavorable to its admission, the third favorable, and the prosecutor, by his influence has a fourth added, who will let in any species of hearsay,, bad character, and suspicions of other crimes, committed by the defendant? Here the court will be divided two and two, and the motion to reject the illegal proof will fail, when the defendant may be convicted upon the infamy of his character, and not for the crime he stands charged with. I say such may be the result, were four justices to preside; I therefore have doubts of its legality. There being in my estimation, however, no cause before the court, I do not pretend to give any opinion on either of these points, and only suggest them as worthy of serious consideration.
I extremely regret, in this case, the necessity I feel to differ with a majority of my brother judges in opinion; and nothing but the most thorough conviction, that there is no cause before the court upon which it can act, would have made me do so.
Were I permitted to look into the affidavits of gentlemen of high respectability, whom I have long known, and whose statements I do not doubt to be true, wherein the whole evidence in the cause is set forth, 1 would say that in the course of a life of some considerable experience in criminal prosecutions, I never have known •any person convicted of a crime, upon evidence so slight; and upon evidence, that I feel pretty confident, no man who maintained a good character, could have been convicted upon, by the highly respectable gentlemen by whom and before whom this slave was tried. Such is, however, human nature, and perhaps the best part of it, that men have strong feelings of abhorrence to a man of *192 infamous character. Yet those feelings should not, in anywise, influence the judgment on the trial of any odious individual, for a specific crime charged upon him.
It may be that such feelings had some influence in the present cause, and if they had in the opinion of the circuit judge, it is another reason why he should re-examine the proceedings, and award a procedendo to the three first justices, to give the slave another trial. What the facts in this cause really are, it is impossible for me to say, unless the cause was before me; and I only have haz-zarded some conjectures from the complexion of the case as set forth by the owner of the slave, by his ex parte affidavits.
That the justices and jury who tried the cause, were in both instances, influenced by the very best motives I am very sure; and that they intended to administer the law correctly to the defendant, I am equally certain; hut that they may have erred in their construction of the statutes, is, I think, worthy of consideration.
I have no doubt the appeal in the nature of a writ of error, should be quashed, and the proceeding brought to this court, dismissed therefrom, for want of jurisdiction in this court, over the cause of the State against Bob, the slave.
Judgment reversed.